IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,        )<br>                                             )<br>       Plaintiff,                    )<br>                                             )<br>vs.                                       )<br>                                             )<br>                                             )<br>Alejandro Seaman (aka Alejandro Seaman)<br>Morales),                              )<br>                                             )<br>       Defendant.                 )<br>_____) | No. CV 12-572-TUC-DCB (BPV)<br><br>**REPORT & RECOMMENDATION** |

Pending before the Court is the Government's Motion for Summary Judgment (Doc. 11) ("MSJ"). For the following reasons, the Magistrate Judge recommends that the District Court grant the Government's Motion.

**I       FACTUAL & PROCEDURAL BACKGROUND**

On July 27, 2012, the Government filed the instant action pursuant to 8 U.S.C. §1451(a) seeking to revoke and set aside the order admitting Defendant to United States citizenship and to cancel Defendant's Certificate of Naturalization issued in the name of Alejandro Seaman. (Doc. 1, ¶1). Attached to the Complaint is the affidavit, with supporting exhibits, of Sarah Rockelmann, Special Agent of U.S. Immigration and Customs Enforcement, Department of Homeland Security. (Exh. A). The Complaint advances two counts alleging that Defendant unlawfully procured his naturalization. They are that: (1) he committed an unlawful act that precluded him from establishing good moral character (Count

1); and he concealed the material fact that he had been arrested and indicted for unlawful acts (Count 2).

The record reflects that service was returned executed on Defendant on August 22, 2012. (Doc. 6). The record also reflects that Defendant has not filed an Answer or otherwise appeared in this action. The Government certifies that a copy of the pending MSJ was mailed to Defendant on February 8, 2013. (MSJ, p. 3). The response time for Government's motion has expired. *See* LRCiv. 56.1(d), Rules of Practice of the U.S. District Court for the District of Arizona. To date Defendant has not filed a notice of appearance or any other document in this action.

## II.     DISCUSSION

The United States Supreme Court "has long recognized the plain fact that to deprive a person of his American citizenship is an extraordinarily severe penalty." *Klapprott v. United States,* 335 U.S. 601, 612 (1949). "[B]ecause of the grave consequences incident to denaturalization proceedings, [the Supreme Court has] held that a burden rests on the Government to prove its charges in such cases by clear, unequivocal and convincing evidence which does not leave the issue in doubt." *Id.* (*citing Schneiderman v. United States,* 320 U.S. 118, 158 (1943). In *Klapprott,* the Supreme Court found a strong indication in the denaturalization statutes that Congress did not intend to authorize courts automatically to deprive people of their citizenship for failure to appear. *Id.* at 388. In setting aside a default judgment entered in a denaturalization proceeding, the Court held that the courts should not "deprive a person of his citizenship until the Government first offers proof of its charges sufficient to satisfy the burden imposed on it, even in cases where the defendant has made a default in appearance." *Id.* at 612-13.

In light of *Klapprott*, the Government has filed the instant MSJ instead of seeking default judgment. (MSJ, p. 2 n.1).

### A.     Statement of Facts

On August 7, 2007, Defendant, who was born in Mexico and had been admitted to the United States and granted lawful permanent resident status in 1994, filed an Application for

1  Naturalization ("Application"), Form N-400, with the U.S. Citizenship and Immigration
2  Services ("USCIS") office in Tucson, Arizona. (Complaint, Exh. A, ¶III, & internal exhs.
3  2D; MSJ, Exhs. A, D) On August 20, 2008, Defendant was interviewed by a USCIS
4  examiner concerning his Application. (MSJ, Exh. E). Thereafter, on September 25, 2008,
5  while Defendant's Application was pending with USCIS, Defendant was arrested in Tucson,
6  Arizona for Possession of Marijuana for Sale and Transportation/Sale of Marijuana. (MSJ,
7  Exh. F). After his Application was approved, on October 17, 2008, Defendant was indicted
8  in the Superior Court for the State of Arizona, County of Pima, for Possession of Marijuana
9  for Sale, a state felony violation. (MSJ, Exh. G). On October 23, 2008, when Defendant
10 appeared before the U.S. District Court for the District of Arizona for his Naturalization Oath
11 Ceremony, he indicated on Form N-445, Notice of Naturalization Oath Ceremony, which he
12 submitted that same day to U.S. Citizen and Immigration Services, that after the date he was
13 first interviewed on his Application, he had not been arrested, cited, charged, indicted,
14 convicted, fined, or imprisoned for breaking or violating any law or ordinance, including
15 traffic violations. (MSJ, Exh. H). On October 23, 2008, Defendant was administered the oath
16 of citizenship and admitted as a United States citizen. (MSJ, Exh. I). On December 18, 2008,
17 Defendant, pursuant to a plea agreement, pled guilty in State court to Solicitation to Possess
18 Marijuana for Sale, a class six felony in violation of A.R.S. §§13-1002, 13-3405, was
19 convicted of same, and sentenced to probation for a period of two years. (MSJ, Exhs. J-K).

20         The Government alleges in Count One of its Complaint that Defendant unlawfully
21 procured his naturalization because he committed an unlawful act that precluded Defendant
22 from establishing the requisite good moral character. According to the Government,
23 Petitioner was required to establish that he was and continued to be a person of good moral
24 character from 5 years before he filed his Application until October 23, 2008, the date he
25 became a naturalized United States Citizen. (Complaint, ¶21 (*citing* 8 U.S.C. §1427(a)). The
26 Government alleges that Defendant could not establish he was a person of good moral
27 character on September 25, 2008 because he committed an unlawful act that adversely
28 reflected upon his moral character during the statutory period, and thus illegally procured his

1 naturalization.

2 In Count Two, the Government alleges that Defendant unlawfully procured his
3 naturalization because he concealed the material fact that he had been arrested and indicted
4 for unlawful acts. According to the Government, Defendant's misrepresentation and
5 concealment of his criminal history in Form N-445 was material to determining his eligibility
6 for naturalization because such history would have precluded him from establishing the
7 requisite of good moral character for naturalization. (*Id.* at ¶¶28-31).

### B.  Summary Judgment Standard

9 A court "shall grant summary judgment if the movant shows that there is no genuine
10 dispute as to any material fact and the movant is entitled to judgment as a matter of law."
11 Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The
12 moving party bears the initial responsibility of presenting the basis for its motion and
13 identifying those portions of the record, together with affidavits, which it believes
14 demonstrate the absence of a genuine issue of material fact. *Id.* at 323.

15 If the moving party meets its initial responsibility, the burden then shifts to the
16 opposing party who must demonstrate the existence of a genuine dispute of material fact.
17 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd.*
18 *v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The opposing party need not establish
19 a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual
20 dispute be shown to require a jury or judge to resolve the parties' differing versions of the
21 truth at trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).
22 If the factual context makes the non-movant's claim implausible, that party must come
23 forward with more persuasive evidence to support its claim than would otherwise be
24 necessary. *Matsushita,* 475 U.S. at 587. The mere existence of a scintilla of evidence
25 supporting the non-movant's position will be insufficient; there must be evidence from which
26 a fair-minded jury could reasonably find for the non-movant. *Anderson,* 477 U.S. at 252.

27 The ultimate question is whether the evidence "presents a sufficient disagreement to
28 require submission to a jury or whether it is so one-sided that one party must prevail as a

1 matter of law." *Anderson*, 477 U.S. at 251-52. The evidence of the non-movant is "to be 2 believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But, if the 3 evidence of the non-moving party is merely colorable or is not significantly probative, 4 summary judgment may be granted. *Id.* at 248-49.

5 Additionally, in resolving a motion for summary judgment, the Court must also 6 consider the applicable burdens of proof. *Eisenberg v. Insurance Co. of N. Am.,* 815 F.2d 7 1285, 1288 (9th Cir. 1987). In this instance, the Government must prove its case by "clear, 8 unequivocal, and convincing evidence, which does not leave 'the issue in doubt...'" that the 9 defendant is subject to denaturalization. *Schneiderman,* 320 U.S. at 125, 158; *see also* 10 *Fedoronko v. United States,* 449 U.S. 490, 505 (1981); *United States v. Arango,* 670 F.3d 11 988, 992-93 (9th Cir. 2012).

**C.   Denaturalization**

13 The Supreme Court has been clear that in an action for denaturalization filed pursuant 14 to 8 U.S.C. § 1451(a), the "facts and the law should be construed as far as is reasonably 15 possible in favor of the citizen." *Scheniderman,* 320 U.S. at 123. However, once a 16 determination that a naturalized citizen obtained his citizenship illegally or by willful 17 misrepresentation or concealment of a material fact, the court "has no discretion to excuse 18 the conduct." *Fedorenko,* 449 U.S. at 517; *see also id.* at 518 (courts are without authority 19 to sanction changes or modifications to the terms and conditions for obtaining citizenship that 20 Congress has prescribed; instead, the court's duty is "rigidly to enforce the legislative will 21 in respect of a matter so vital to the public welfare." *United States v. Ginsberg,* 243 U.S. 472, 22 474-475 (1917)); *United States v. Dang,* 488 F.3d. 1135, 1139 (9th Cir. 2007).

23 Pursuant to 8 U.S.C. § 1451(a), a defendant's naturalization must be revoked if his 24 naturalization was (1) "illegally procured"; or (2) "procured by concealment of a material 25 fact or by willful misrepresentation." *See Dang,* 488 F.3d. at 1139.

**D.   Illegal procurement**

27 A defendant's failure to comply with all congressionally imposed requirements for 28 citizenship renders a certificate of citizenship "illegally procured." *Fedoronko,* 449 U.S. at

- 5 -

1 506. To be eligible for naturalization, an applicant must show, among other things, that he
2 has been a person of good moral character for the five-year statutory period before he files
3 his Application, until the time he becomes a naturalized United States citizen. 8 U.S.C. §
4 1427(a)(3). The Government argues that Defendant committed a crime involving moral
5 turpitude during the statutory period, and was thus unable to demonstrate good moral
6 character.

7 Although Congress has not specifically defined what "good moral character" is, the
8 Immigration and Nationality Act sets out a list of certain classes of applications who *cannot*
9 be found to have the requisite good moral character. *See* 8 U.S.C. § 1101(f); *Dang,* 488 F.3d
10 at 1139; *United States v. Jean-Baptiste,* 395 F.3d 1190, 1193 (11th Cir. 2005); *Khamooshpour*
11 *v. Holder,* 781 F.Supp.2d 888, 894 (D. Ariz. 2011). For example, Congress determined that
12 any person who is a habitual drunkard, whose income is derived principally from illegal
13 gambling activities, or who has been convicted of an aggravated felony shall be found to lack
14 good moral character, and is accordingly ineligible for naturalization. 8 U.S.C. § 1101(f).
15 Additionally, 8 U.S.C. § 1101(f)(9) contains a "catch-all" provision, which provides, "[t]he
16 fact that any person is not within any of the foregoing classes shall not preclude a finding that
17 for other reasons such person is or was not of good moral character." In accordance with
18 section 1101(f), the INS "shall evaluate claims of good moral character on a case-by-case
19 basis taking into account the elements enumerated in this section and the standards of the
20 average citizen in the community of residence." *Khamooshpour*, 781F.Supp. at 894 (quoting
21 8 C.F.R. § 316.10(a)(2)). An applicant "shall be found to lack good moral character" if, for
22 example, he committed and was convicted of one of more crimes involving moral turpitude.
23 8 C.F.R. §§ 316.10(b)(2)(i). *Dang,* 488 F.3d at 1139. The regulations also contain a broader,
24 catch-all provision:

> Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant:
>
> ...
>
> Committed unlawful acts that adversely reflect upon the applicant's moral

- 6 -

> character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b)(1) or (2).

8 C.F.R. § 316.10(b)(3)(iii). If an applicant falls within one of the statutory categories that requires that an applicant "shall be found to lack good moral character," he is precluded from establishing his good moral character and is accordingly ineligible for naturalization.

Federal courts have generally, found drug trafficking offenses to be crimes of moral turpitude. *See, e.g.*, *Padilla v. Kentucky*, 559 U.S. 356, —. 130 S.Ct. 1473, 1479 (2010)("Except for 'technical, inadvertent and insignificant violations of the laws relating to narcotics," it appears that courts treated narcotics offenses as crimes involving moral turpitude.")(internal citation omitted). The Ninth Circuit has held that a conviction under Arizona law for solicitation to possess at least four pounds of marijuana for sale constitutes a crime involving moral turpitude for purposes of removal. *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 905 (9th Cir. 2007).

Because Defendant was not convicted of the offense during the statutory period, though the offense was arguably a crime of moral turpitude, his naturalization is not unlawful under 8 C.F.R.§ 316.10(b)(2)(i). Nonetheless, Defendant's plea and conviction for Solicitation to Possess Marijuana for Sale, establishes, by evidence that is clear, unequivocal, and convincing, that Defendant committed an unlawful act during the statutory period that adversely reflected upon his moral character under 8 C.F.R. § 316.10(b)(3)(iii), rendering Defendant's naturalization unlawful. Even though Defendant was not convicted during the statutory period of a crime of moral turpitude, he would have been precluded under 8 U.S.C. § 1101(f)(8), as elaborated in 8 C.F.R. § 316.10(b)(3)(iii), from establishing good moral character, and would therefore have been barred from acquiring citizenship. *See Jean-Baptiste*, 395 F.3d at 1194(a conviction for a qualifying controlled substance offense after naturalization, precludes an applicant from establishing good moral character under 8 U.S.C. § 1101(f)(8)); *see also United States v. Suarez*, 664 F.3d 655, (7th Cir. 2011) (because Suarez committed a drug offense as established by his later conviction, he was precluded under 8 U.S.C. § 1101(f)(8), as elaborated in 8 C.F.R. § 316.10(b)(3)(iii), from establishing good

1 moral character, and thus was barred from acquiring citizenship.) Thus, the Magistrate Judge finds that Defendant illegally procured his citizenship, and recommends that the District Court revoke Defendant's citizenship under 8 U.S.C. § 1451(a).

### E. Concealment of a Material Fact or Willful Misrepresentation

The denaturalization statute, 8 U.S.C. § 1451(a), permits the government to revoke citizenship if naturalization was "procured by concealment of a material fact or by willful misrepresentation." *Arango*, 670 F.3d at 992-93. This ground for denaturalization contains four independent requirements: (1) the naturalized citizen must have misrepresented or concealed some fact; (2) the misrepresentation or concealment must have been willful; (3) the fact must have been material; and (4) the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment." *Kungys v. United States*, 485 U.S. 759, 767 (1988).

The Magistrate Judge finds that Defendant misrepresented and concealed his criminal history from the USCIS by answering "No" to "Question 4." on Form N-445 because Petitioner had been arrested and indicted in state court for felony solicitation to possess marijuana for sale since the date of approval of his Application.

Although the term "willful" is not defined in the denaturalization statute, The Ninth Circuit has held that an alien who seeks to obtain immigration status by misrepresenting a material fact has done so "willfully" if the misrepresentation was "deliberate and voluntary," even if the Government has not demonstrated an intent to deceive the government. *Arango*, 670 F.3d at 994–995 (citing *Espinoza–Espinoza v. INS*, 554 F.2d 921, 925 (9th Cir. 1977)). Such evidence may be circumstantial. *Id.* at 926.

Completion of Form N-445, a reasonably straightforward one-page form, required Defendant to certify that he answered the questions or they were answered at his direction, and that the answers "are true and correct as of the day of the naturalization oath ceremony." (MSJ, Exh. H). The Magistrate Judge concludes that Defendant's representations on Form N-445 were voluntarily and deliberately made, and thus finds that the misrepresentations were willful.

- 8 -

A misrepresentation or concealment is material to an applicant's naturalization if the misrepresentation has "a natural tendency to produce the conclusion that the applicant was qualified" to naturalize when in fact, he was not. *Kungys,* 485 U.S. at 771-72. This test must be met by evidence that is clear, unequivocal, and convincing. *Id.* at 772 (citing *Schneiderman,* 320 U.S. at 158).The Ninth Circuit has applied a heightened materiality requirement in the context of denaturalization and held that the Government must also produce sufficient evidence to raise a fair inference that the applicant was ineligible. *United States v. Puerta*, 982 F.2d 1297, 1303-04 (9th Cir. 1992).

The Government argues that the information that Defendant concealed was unquestionably material because it would have affected the outcome of his naturalization process. Defendant was statutorily required, as a prerequisite to naturalization, to show that he has the requisite good moral character up to the date he took the naturalization oath. See 8 U.S.C. § 1427(a)(1). Form N-445 was Defendant's last submission where he was required to represent his good moral character, including the disclosure of any recent arrests. The record of his arrest on September 25, 2008, and indictment on October 17, 2008, show more than a "fair inference" of ineligibility. *Puerta*, 982 F.2d at 1304. To lawfully obtain U.S. citizenship, a person must be of "good moral character" for the five years immediately preceding the date of filing his citizenship application, *i.e.* Form N-400, until the date she or he is admitted to citizenship. *See* 8 C.F.R. § 316.10(a)(2); *Dang,* 488 F.3d. at 1139. Even though Defendant was not convicted during the statutory period of a crime of moral turpitude, he would have been precluded under 8 U.S.C. § 1101(f)(8), as elaborated in 8 C.F.R. § 316.10(b)(3)(iii), from establishing good moral character, and would therefore have been barred from acquiring citizenship. Special Agent Rockelmann's declaration anecdotally supports the reasonable inference that Defendant's disclosure of his arrest would have had an actual influence on the USCIS approval of his naturalization: "Defendant's arrest would have precluded him from establishing the requisite good moral character for naturalization."(Complaint, Declaration of Sarah Rockelmann, ¶III.B) Thus, because Defendant's misrepresentations and concealment of his criminal history would have had the

1 natural tendency to influence the USCIS decision whether to approve his naturalization
2 application, the Magistrate Judge finds the misrepresentation and concealment were material.

3       A misrepresentation "procures citizenship" when, if disclosed, the misrepresented or
4 concealed information would have resulted in the denial of an applicant's naturalization
5 application. *See Kungys*, 485 U.S. at 773; *id.* at 788 (Stevens, J., concurring) (stating that the
6 procurement prong "requires that the material misrepresentation must have had the effect of
7 allowing the person to obtain citizenship when a truthful statement would have led directly
8 or after investigation to the denial of citizenship"). The Form N-445 stated that "[t]he
9 principal purposes for requesting the information are to enable Adjudication Officers of the
10 USCIS to determine an applicant's eligibility for naturalization." (MSJ, Exh. H). Under 8
11 C.F.R. § 335.5, USCIS may reopen an approved naturalization application before an oath
12 ceremony if they receive potentially disqualifying information. *Gorbach v. Reno*, 219 F.3d
13 1087, 1102 (9th Cir. 2000). Because Defendant misrepresented and concealed information
14 that would have established his statutory ineligibility to naturalize, USCIS was unable to
15 consider the information on his arrest. His misrepresentation and concealment satisfy the
16 "procurement" prong of the material misrepresentation test when he subsequently was given
17 the oath of allegiance and became a U.S. citizen. Thus, the Magistrate Judge finds that
18 Defendant procured his naturalization by willful misrepresenation and concealment of
19 material facts and recommends that the District Court revoke his citizenship pursuant to the
20 requirements of 8 U.S.C. § 1451(a).

21 **III.    RECOMMENDATION**

22       Because the Government has demonstrated by clear, unequivocal and convincing
23 evidence that Defendant illegally procured his citizenship, and, additionally, procured his
24 naturalization through willful misrepresentation and concealment of a material fact, the
25 Magistrate Judge RECOMMENDS that the District Court GRANT the Government's motion
26 for summary judgment (Doc. 11), and enter an order revoking and setting aside the District
27 Court's order admitting Defendant to United States citizenship.

28       The Magistrate Judge FURTHER RECOMMENDS that the District Court cancel

1  Defendant's Certificate of Naturalization, Number 31674355 dated October 23, 2008, and
2  order him to surrender and deliver his Certificate and all other indicia of United States
3  citizenship to the Attorney General, or his designated representative.

4  Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within
5  fourteen days after being served with a copy of this Report and Recommendation. A party
6  may respond to another party's objections within fourteen days after being served with a copy
7  thereof. Fed.R.Civ.P. 72(b). No reply to any response shall be filed. *See id.* If objections are
8  not timely filed, then the parties' rights to de novo review by the District Court may be
9  deemed waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en
10 banc).

11 If objections are filed the parties should use the following case number: **CV**
12 **12-0572-TUC-DCB.**

13 IT IS ORDERED the Clerk of Court shall send a copy of this Report and
14 Recommendation to Defendant at the following address:

16  Alejandro Seaman
    249 W. Calle Margarita
17  Tucson, Arizona 85706

19  DATED this 9th day of July, 2013.

*(signature)*
Bernardo P. Velasco
United States Magistrate Judge